## PEOPLE v. BIDDISON.

(Supreme Court, Appellate Division, First Department.    February 4, 1910.)

1. FORGERY (§ 44*)—CORPORATE BONDS—EVIDENCE—SUFFICIENCY.
    In a prosecution for forgery of a corporate bond, evidence *held* to support a finding that the signature of the trustee was put upon the bond without authority, and that the bond was a forgery.
    [Ed. Note.—For other cases, see Forgery, Cent. Dig. §§ 117–121; Dec. Dig. § 44.*]

2. FORGERY (§ 44*)—CORPORATE BONDS—UTTERING—EVIDENCE—SUFFICIENCY.
    In a prosecution for forgery of a bond, evidence *held* to sustain a conviction on the ground that defendant uttered a forged bond.
    [Ed. Note.—For other cases, see Forgery, Cent. Dig. §§ 117–121; Dec. Dig. § 44.*]

3. JUDGES (§ 32*)—POWER OF SUCCESSOR AS TO PROCEEDINGS BEFORE FORMER JUDGE—INDICTMENT—AMENDMENT.
    In a prosecution for forgery of a corporate bond, where the bond had been physically pasted upon the indictment and a transfer by attorney thereby covered up, and the presiding judge at a former trial directed an amendment by writing into the indictment the covered-up indorsement, a motion to strike out the amendment at the subsequent trial was properly refused, since the court had no power to strike out an amendment granted by another judge.
    [Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 158–164; Dec. Dig. § 32.*]

4. FORGERY (§ 29*)—INDICTMENT—FRIVOLOUS OBJECTIONS.
    In a prosecution for forgery of a corporate bond, an objection that the indictment was defective, as alleging the incorporation of the company

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
    121 N.Y.S.—9·

under the laws of the United States, and that the certificate of incorporation shows an incorporation under the laws of the District of Columbia, was frivolous; the laws of both being made by Congress, and the bond attached to the indictment showing on its face that the company was incorporated under acts of the United States for the District of Columbia.

[Ed. Note.—For other cases, see Forgery, Dec. Dig. § 29.*]

5. CRIMINAL LAW (§ 743*)—DEFENDANT'S TESTIMONY—CREDIBILITY—QUESTION FOR JURY.

In a prosecution for forgery of a corporate bond, where defendant alone testified that he had authority to attach the forged name to the bond, his credibility was for the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1722; Dec. Dig. § 743.*]

Appeal from Court of General Sessions, New York County.

Samuel M. Biddison was convicted of forgery in the first degree, and he appeals. Affirmed.

See, also, 118 N. Y. Supp. 1130.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, McLAUGHLIN, and DOWLING, JJ.

Clark L. Jordan, for appellant.

Charles S. Whitman, Dist. Atty. (Robert C. Taylor, of counsel), for the People.

CLARKE, J. In November, 1904, the defendant procured the incorporation of the Central Coal, Lumber & Construction Company in the District of Columbia, with a capital of $500,000, to buy and sell lands, lumber, coal, and timber and to issue bonds on its assets, to sell stock or bonds and loan out the same, and to do any other business connected therewith in accordance with its charter.

The defendant testified that he was one of the incorporators, that Alexander G. Donnelly was another, and the three others lawyers' clerks in Washington, members of an incorporating concern that did that business; that he owned all the stock; that Donnelly was elected president, John R. Polk secretary, and that he was elected a director, being one of the incorporators.

Donnelly testified that the defendant asked him to be an incorporator, and that he objected upon the ground that he was not a commercial man, but that it was agreed that he was to go on for a dummy or straw man for the purposes of organization; that he did not know the name of the company until he saw it on the defendant's office door; that he never attended any meetings of the officers or board of directors, and he did not know that there were any directors. He gave a power of attorney to the defendant, authorizing him to sign all papers, bonds, stock, or other documents for and in relation to the business of the Central Coal, Lumber & Construction Company, but in no wise to bind him individually for obligations of said company, which was dated March 3, 1906.

Polk testified that he had resided in Indiana, and had not been in New York from about the 23d of March, 1905, until some time in February, 1909; that he was never present at any meeting of the board of di-

rectors of this company; that at the defendant's request he had given him a power of attorney, dated the 18th of November, 1905.

In March, 1906, the defendant made an arrangement with King, a printer, for the printing of some bonds of the Central Coal, Lumber & Construction Company. Three hundred were to be printed on paper with brown borders and numbered from 1 to 300, and 300 were printed on orange colored borders, and it is conceded that they were numbered from 1 to 300, and were identical in every respect with the brown bonds, as far as the printed matter was concerned, when they came off the press, except in the color. King testified that the defendant said that the orange bonds were wanted for samples. He also testified that he received his pay for printing them from Dunton.

Dunton testified that, after he had advanced $100 to the defendant for a payment to be made on his house, the defendant said he wanted to get out these bonds in order to lend them to people who wanted to use them as collateral security, and it was necessary for him to live along until he got the bonds out, and when he got the bonds out he would have no difficulty in lending the bonds, "and I would be paid back my money, and he would take up the bonds that were deposited and float them all"; that besides the $100 already referred to, he advanced $524, and that he received $200,000 of the brown bonds as security for the entire sum of $624; that he put these 200 brown bonds in the safe, and that he had not got the $624 back that he paid.

The defendant was indicted for forging a bond of the Central Coal, Lumber & Construction Company, and it was physically attached to the indictment. It was one of the orange bonds. It was for $1,000, with coupons attached. It was dated November 15, 1904, and bore the corporate seal, and purported to bear the signature of "A. Graham Donnelly, President. Attest: J. R. Polk, Secretary." It was entitled "First mortgage, twenty-year, five per cent. bond," and it recited that for value received the company promises to pay on the 15th of November, 1924, at the office of the trustee, New York City, to the registered owner of this bond, $1,000 in gold coin of the United States of the present standard of weight and fineness, and to pay interest thereon from November 15, 1904, at the rate of 5 per cent. per annum. Also:

"This bond is one of a duly authorized issue of registered bonds of the company. The aggregate amount thereof is limited, so that there shall never be at any time outstanding bonds of said issue for an aggregate sum exceeding $300,000, all of which bonds have been or may be issued under and in pursuance of, and are to be secured by, a first mortgage or deed of trust, dated November 15, 1904, duly executed by the company to John A. P. Glore, of New York, as trustee, conveying the property and franchises of the Central Coal, Lumber & Construction Company, named in said mortgage or deed of trust, to which reference is hereby made for a description of the property and franchises mortgaged, and the nature and extent of the security, and the rights of the holders of said bonds under the same, and the terms and conditions upon which said bonds are issued. The Central Coal, Lumber & Construction Company reserve the right to redeem this bond upon any interest date upon giving ninety days' notice at 110 per cent. and accrued interest. This bond shall not become obligatory for any purpose until it shall have been authenticated by the certification hereon indorsed by the trustee under said mortgage or deed of trust."

The bond also bore the following:

"Trustee's Certificate. This bond is one of a series of bonds described in the within-mentioned mortgage, or deed of trust. J. A. P. Glore, Trustee."

The signatures of Donnelly and Polk were written by the defendant in simulation of their handwriting, and he claims authority therefor under the powers of attorney heretofore alluded to. The bond upon its face states that it shall not become obligatory for any purpose until it shall have been authenticated by the certificate thereon indorsed by the trustee. A fac simile of the signature of the trustee was put upon the certificate by the defendant by means of a rubber stamp which he had had made.

Glore, the trustee, testified that he never signed an orange colored bond; that he never told the defendant that he might have a rubber stamp made with the name J. A. P. Glore on it, nor that he might stamp that name on any of the orange colored bonds; that he never authorized him, either directly or indirectly, to sign these bonds; that he was not trustee of any other bonds than the brown bonds based upon the $300,000 mortgage upon land in Wisconsin; that he never heard of any other mortgage, and that he did not know anything about orange bonds at all.

The judgment of conviction depends upon the finding of fact by the jury that the signature of Glore, the trustee, was put upon that bond without authority, and that therefore the bond was a forged bond, purporting to be that which it was not. Such finding is amply supported by the evidence. The proof sustains conviction upon the ground that defendant uttered the forged bond. He loaned 10 of the orange bonds to Dresser to use as collateral, and received a money payment and a promissory note for such use. The defendant testified that the bonds were lent under a trust receipt, to be returned in four days, and if not so returned Dresser was to pay $500 for time use for four months. Dresser deposited them as collateral for a loan obtained by him. The defendant took the stand in his own behalf, and, while he testified that he had authority from Glore to make the rubber stamp and to affix his signature thereby to these bonds, his testimony was such that the jury would have been authorized to reject every word he said.

Papers were put in evidence, which had been received from him, which stated that:

"The property covered by the mortgage comprised 60,000 acres of land in the state of Wisconsin and other extensive holdings in the states of Missouri, Michigan, Kentucky, Tennessee, Virginia, Georgia; also in the province of New Brunswick, and 40,000 acres just purchased in the republic of Mexico. These properties are held in fee simple, and have no prior liens or debts other than the mortgage securing the company's bonds."

"The stock was issued and held at par, and none has ever been sold at less. Dividends of 5 per cent. were paid in 1905, and 7 per cent. in 1906 and 1907, and the interest on the bonds has been met promptly. A sinking fund of $10,800 has been set aside five years in advance of the time called for in the mortgage. There is no floating indebtedness whatever; the company's purchases being strictly for cash. The bonds never sold below 88 per cent. or the stock below par."

He also put out a condensed and comprehensive report of the company for the years 1906, 1907, and 1908, from which under various items it appeared that for 1906 the income of the company was $99,208, for 1907 $130,916, and for 1908 $620,100; and, in the statement of expenditures, that for each of the three years interest on bonds, $300,000, 5 per cent. were paid, $15,000, and that on dividends on stock of 5 and 7 per cent. there had been paid $25,000 in 1906 and $35,000 in each of the other two years; that for a sinking fund, not required until 1912, $10,800 had been laid away in 1907, and $15,000 in 1908, resulting in a surplus or profit of $11,585 in 1906, $22,033 in 1907, and $319,100 in 1908; and yet he testified "that he was the whole thing there when all these bonds were signed"; that the company had no funds except what Mr. Dunton furnished; that Polk was secretary and treasurer up to 1906, but that he never handled a dollar; that they had no books; that "they had no funds, they wasn't doing any business"; and that none of the stock was issued until 1907.

There was no evidence that the company had good title to a foot of land anywhere. The situation suggested by the evidence presents a novel form of financial enterprise. A man with a few dummies organizes a corporation, procures the printing of an issue of bonds, and then loans those bonds to others, for a price, to be used by them as collateral security to procure loans of money, and, having been obliged to deposit two-thirds of the issue to borrow the money necessary to pay for the printing of the bonds, forges another set to be used for the same purpose.

We have examined this case with interest, because of its novelty, and with care, to see whether any rights of the defendant had been violated. Upon the first trial the indictment was amended. It should be recalled that the bond had been physically pasted upon the indictment and a transfer by attorney had been thereby covered up. The presiding judge upon the first trial directed an amendment by writing into the indictment this covered-up indorsement of transfer by attorney, and upon the trial at bar there was a motion made to strike out this amendment. The trial court very properly declined to grant the motion, and it is quite evident that he had no power to strike out an amendment granted by another judge. But, if the granting of the amendment were properly before us, we should say, first, that it was entirely proper, because it was the mere bringing into sight what was on the bond, the subject of the indictment, which had happened to be physically covered up by pasting it on. In the second place, that no possible harm could come to the defendant, because this amendment was entirely immaterial to the cause of action. The forgery here complained of, and of which the defendant has been found guilty, was that of the trustee's signature, and had nothing whatever to do with the said transfer.

It is claimed that there is defect, in that the indictment alleges the incorporation of the company under the laws of the United States, and that the certificate of incorporation shows an incorporation under the laws of the District of Columbia. The objection is frivolous. The laws governing the District of Columbia are made by the Congress of

the United States, and, of course, are the laws of the United States, and upon the face of the indictment the bond which the defendant was accused of having forged bore upon its face "a corporation created and existing pursuant to authority granted by acts of the United States of America for the District of Columbia, approved March 3, 1901, and June 30, 1902."

We think the crime charged was fully made out, that the only contradiction came from the defendant himself, and that only as to whether or not he had authority from Glore to attach his name to the bond in question, and that the credibility of the defendant's evidence was entirely for the jury, and his conflicting, improbable, and in many instances false statements clearly authorized a complete rejection of his denials. We think that the defendant had a fair trial, and was properly convicted of the crime whereof he stood charged.

It follows, therefore, that the judgment appealed from should be affirmed. All concur.